UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

RAFAEL A. ROQUEMORE,

        Plaintiff,

v.                                                                Case No. 09-CV-358

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____

# ORDER

Plaintiff Rafael Roquemore ("Roquemore") filed this action for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. Roquemore claims disability arising from back, hip, neck, arm and shoulder pain and alleges an onset date of March 31, 2007. Based on the reasoning set forth below, the court concludes that the Commissioner's decision is not supported by substantial evidence and remands the case for further proceedings.

## BACKGROUND

**I.    Procedural Background**

Roquemore filed for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act on July 17, 2007. (Tr. 108-117). The Commissioner denied the claims and a hearing was held before Administrative Law Judge (ALJ) Margaret O'Grady on June 6, 2008. (Tr. 30). The ALJ denied Roquemore's applications for benefits

in a written decision dated July 24, 2008. (Tr. 22). The Appeals Council denied review and Roquemore filed suit in this court on April 3, 2009.

## II.   Factual Background and Hearing Testimony

Roquemore was 49 years old at the time of his hearing and had last worked in March 2007. (Tr. 34). He has a high school education and completed one year of college. (Tr. 33-34). Roquemore's most recent work was in housekeeping, but he was terminated after two months based on tardiness and inability to do satisfactory work. (Tr. 34). The majority of Roquemore's prior employment was in the field of medical records. He was terminated from his most recent medical records position because of the physical challenges of the work and because of tardiness. (Tr. 35).

Roquemore testified that his disability results from pain in his lower back, shoulders, hips, knees, neck, and hands and feet. (Tr. 37). His back pain causes constant discomfort and he experiences neck pain approximately three times per month. (Tr. 37). Roquemore also reports experiencing occasional pain in both shoulders and notes that one may give out while reaching or holding objects. (Tr. 38). He also suffers momentary, unpredictable shooting pain in his knees and feet. (Tr. 38-39). Roquemore has constant irritation in his hips that requires him to shift positions. (Tr. 39). He also has devastating headaches approximately once per year, forearm pain two to three times per week, and shooting chest pains. (Tr. 40-41). Roquemore has never taken prescription medication for his pain, but does address it with over-the-counter medication three times a week. (Tr. 36-37). He

explained that he has received little medical care because he did not possess insurance. (Tr. 46).

Roquemore also testified regarding his daily activities. He reported that he could attend to his personal care, cook short meals, grocery shop and do some household chores. (Tr. 42-43). He reports spending time relaxing, walking, visiting his sister, watching television, and reading. (Id.). Roquemore possesses a driver's license but often uses public transportation. (Tr. 34, 42). Roquemore testified that he can only stand or sit for 15 to 20 minutes before he needs to move because of pain. (Tr. 43-44). He can comfortably lift 10 to 20 pounds and can walk for two blocks. (Tr. 44). Roquemore explained that he has good days and bad days and that on a bad day he is "bedridden" and would be unable to work. (Tr. 47-48).

In addition to Roquemore's testimony, the ALJ also received testimony from Vocational Expert (VE) Jacqueline Wenkman. The VE noted that a person of Roquemore's age, educational background and work history with limitations including occasional climbing, stooping, balancing and crouching, and no kneeling or crawling, who must be able to alternate between sitting and standing with a Residual Functional Capacity to perform sedentary work could not perform Roquemore's past jobs. (Tr. 50). She did testify, however, that a significant number of jobs exist in Wisconsin that a hypothetical individual with these limitations could perform, including interviewer, order clerk, receptionist, or general office worker. (Tr. 51). When the additional limitations of no bending, lifting, twisting, and standing and

sitting for only 15 to 20 minutes at a time were included, the VE reported that none of the jobs would still be possible. (Tr. 52). The VE further testified that an employer would not tolerate an employee's need to lay down or recline for two hours out of an eight-hour workday or tolerate more than two absences from work per month. (Id.).

## III.     Medical Evidence of Record

Roquemore's relevant medical record begins in October 2004, when he saw Dr. John Skantz and reported moderately severe, continuous back pain. Roquemore informed Dr. Skantz that he has suffered low back pain since he was involved in a motor vehicle accident in 1981. (Tr. 217). Dr. Skantz noted that Roquemore's x-rays showed multilevel degenerative changes with osteophytes in the cervical spine, an old compression fracture at the L1 vertebral body, and degenerative changes with osteophytes in the lower thoracic spine. (Tr. 217). Roquemore reported that he had taken a single dose of Celebrex, which appeared to help his pain, and that he took Aleve occasionally. (Tr. 217). Dr. Skantz concluded that Roquemore's back pain likely arose from his degenerative joint disease and an old compression fracture and recommended a program of physical therapy and chiropractice care. (Tr. 218). Dr. Skantz did not proscribe any medications, but noted that he would consider other medications as the need arose. (Id.).

Roquemore participated in a physical therapy program and was discharged from it in December 2004. (Tr. 211). Roquemore reported no improvement of his

Case 2:09-cv-00358-JPS   Filed 03/10/10   Page 4 of 15   Document 18

symptoms and reported a lower back pain at a 5 out of 10. (Id.). His physical therapy discharge evaluation noted that he was being discharged because his inconsistent compliance with his exercise program rendered him unable to progress. (Tr. 212).

The record contains no further evidence of treatment or evaluation until September 2007, when Roquemore was examined by Dr. David Gibbons at the request of a state agency. (Tr. 184-86). Dr. Gibbons observed that Roquemore had difficulty arising from a seated position and walked hunched over with kyphosis throughout his lumbar and thoracic spine. (Tr. 185). Roquemore also had decreased motion in his right hip and x-rays revealed decreased joint space in the medial aspect of the joint and end-plate sclerosis at L5, and a healed compression fracture at L1. (Tr. 186). In his assessment, Dr. Gibbons concluded that Roquemore's back pain was likely longstanding and related to the injuries he sustained in the 1981 automobile accident. (Id.). Dr. Gibbons found that Roquemore "would be unable to perform any activities which would require him to do any bending, lifting, or twisting, or any standing and remain in a seated position for any extended periods of time." (Id.). Dr. Gibbons reported that Roquemore "would have difficulty performing activities which would require him to go up and down stairs, or any significant ambulation" due to his hip issues. (Id.). Dr. Gibbons also stated that medication would likely improve Roquemore's symptoms and that he would benefit from a smoking cessation and weight loss regiment. (Id.).

In October 2007, Dr. Mina Khorshidi completed a physical Residual Functional Capacity Assessment for Roquemore. (Tr. 188-95). The assessment noted diagnoses of chronic back pain, decreased joint space in the right hip, kyphosis, and degenerative disc disease of the lumbar spine. (Tr. 188). Dr. Khorshidi determined that Roquemore was capable of occasionally lifting 20 pounds, frequently lifting 10 pounds, occasionally climbing or balancing, and sitting, standing and walking for approximately six hours of an eight-hour workday. (Tr. 189-90). Dr. Irving Zitman reviewed the evidence in Roquemore's file and affirmed Dr. Khorshidi's assessment one month later. (Tr. 196).

## ANALYSIS

The Social Security Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would accept as adequate to support the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). The court will uphold the Commissioner's decision if it is supported by substantial evidence and does not contain legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). This is a generous standard, but not entirely uncritical. *Id.* The court determines whether the decision is supported by substantial evidence by reviewing the entire record, but the court cannot substitute its judgment for the ALJ's by reconsidering facts, re-weighing evidence, resolving conflicts in evidence, or

deciding questions of credibility. *Jens*, 347 F.3d at 212. Instead, the court looks to see whether the ALJ articulated an "accurate and logical bridge from the evidence to the conclusion" which the court can follow. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Roquemore argues that the ALJ's decision denying him benefits is not supported by substantial evidence. He first asserts that the ALJ's assessment of his credibility is erroneous. Next, Roquemore claims that the ALJ committed legal error in determining his Residual Functional Capacity and reaching her step five finding. The court finds merit in Roquemore's criticisms and will remand the case.

## I. Credibility Determination

Roquemore first challenges the ALJ's determination that the physical limitations he claims are not credible. Though the ALJ did not make a specific credibility finding, the ALJ stated in her decision that "the undersigned Administrative Law Judge cannot credit the claimant's contention of disability." (Tr. 23). The ALJ also found that Roquemore could perform a wide range of sedentary work, "even giving him the benefit of every doubt regarding his complaints (in light of the objective medical evidence)." (Tr. 24).

The court must give special deference to an ALJ's credibility determinations unless they are "patently wrong." *Diaz v Chater*, 55 F.3d 300, 308 (7th Cir. 1995). However, an ALJ's decision may be reversed when it is "unreliable because of serious mistakes or omissions." *Sarchet v. Chater*, 78 F.3d 305, 308 (7th Cir. 1996).

Case 2:09-cv-00358-JPS   Filed 03/10/10   Page 7 of 15   Document 18

This type of error arises when the ALJ bases a credibility determination on serious flaws in reasoning and not merely on the witness's demeanor. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

The court finds that the ALJ's credibility determination is not supported by substantial evidence because she relied upon incorrect information, failed to account for contrary evidence, and did not adequately explain her reasons for finding Roquemore's asserted limitations to be incredible. In reaching her suggested credibility determination, the ALJ references Roquemore's lack of substantial medical intervention and dismisses his proffered explanation that he could not afford treatment, based on the fact that Roquemore "admitted that he has not sought low-cost options." (Tr. 23). However, Roquemore never made such an admission and the respondent concedes that the ALJ's statement is erroneous. (Resp.'s Br., at 8 n.3). The ALJ also relied upon a second misrepresentation of the evidence in reaching her decision. She cites the fact that Roquemore was previously able to work and was terminated from his most recent employment "primarily because of tardiness." (Tr. 24). This suggests that Roquemore has the physical capability to work, but now claims disability simply because he lost his job. However, the ALJ's statement that Roquemore was terminated for tardiness is an inaccurate statement. Roquemore's actual testimony explains that he lost his last job because of "the physical challenges and, and some tardiness." (Tr. 35). Two of the ALJ's justifications for finding Roquemore's claims incredible are based on mistakes and

-8-

misinterpretations of the evidence. This reasoning cannot provide substantial support for her determination.

The ALJ further erred in reaching her credibility analysis by relying on the gap in Roquemore's medical treatment and his ability to work until 2007, without also addressing contrary evidence. The ALJ references Roquemore's limited medical treatment history as one reason for her credibility determination. However, she fails to weigh this consideration against Roquemore's proffered explanation that he did not have insurance or the means to pay for treatment. Roquemore testified that he was unemployed, uninsured, unable to afford gap insurance, and that he had inquired into veterans' benefits and been denied. (Tr. 46). Roquemore's assertions are corroborated by notes in his medical records flagging him as "homeless" and a "dire need situation." (Tr. 204-05). The ALJ also relied upon Roquemore's ability "to work at the substantial gainful level for many years after the referenced motor vehicle accident," suggesting that Roquemore's residual injuries from the accident could not be as severe as claimed. (Tr. 24). However, Roquemore asserted that his condition worsened over time as he aged and that his pain has gotten increasingly worse since 2004. (Tr. 160, 184). This evidence suggests that Roquemore's back condition degenerated as he became an older employee, which is hardly surprising. Thus, his ability to work for many years following his accident is not wholly incompatible with his current claims. The ALJ did not address Roquemore's testimony in her credibility determination, nor did she attempt to explain why his

ability to work until 2007 rendered Roquemore incredible. An ALJ does not have to address every piece of evidence, however, she must confront contrary evidence and state why it was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The ALJ failed to do so. The ALJ may have considered Roquemore's testimony regarding his financial situation and deteriorating physical state and discounted it, but the court cannot assess her reasons because she does not articulate them. Thus, the court cannot determine that these justifications provide substantial evidence for the ALJ's credibility finding.

Additionally, the ALJ does not adequately explain why Roquemore's ability to engage in activities such as managing his personal care, visiting, doing dishes, and handling his finances renders his asserted limitations incredible. The ALJ does not explicitly state that these activities are inconsistent with Roquemore's claims. Instead, she lists his reported limitations on sitting, standing, walking, running and lifting and then states "nevertheless, he has remained able to engage in a number of normal activities." (Tr. 22). This does not satisfy the requirements of Social Security Ruling 96-7p, which states that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7p, 1996 SSR LEXIS 4. Further, the ability to engage in minimal activities does not necessarily disprove Roquemore's disability claims. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

-10-

Case 2:09-cv-00358-JPS   Filed 03/10/10   Page 10 of 15   Document 18

Finally, the court is unconvinced by the respondent's rationalizations for the ALJ's credibility finding. The ALJ herself never specifically states the bases of her determination or the weight she applies to particular evidence and testimony. The respondent argues that various statements made by the ALJ throughout her decision, when viewed collectively, provide adequate support for the ALJ's credibility finding. The respondent cites to inconsistency between Roquemore's claims of disabling pain and the fact that he only took over-the-counter medications three times per week, inconsistency between his allegedly disabling pain and his lack of treatment after December 2004, and inconsistency between his asserted pain and his activities. However, the ALJ herself never explicitly cited these inconsistencies or made the explanations the respondent presents. The court cannot read these explanations into the ALJ's decision or attribute the respondent's reasoning to the ALJ. Indeed, the court may only consider the reasoning that the ALJ actually relied upon in her finding. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (stating that the Commissioner's lawyers cannot advance grounds in support of the agency's decision not given by the ALJ); *see also O'Connor v. Sullivan*, 938 F.2d 70, 73 (7th Cir. 1991) (noting that a court has no authority to supply a ground for an agency's decision that the agency did not rely upon).

## II.  Residual Functional Capacity Determination and Step Five Finding

Roquemore next argues that the ALJ's determination of his Residual Functional Capacity (RFC) is not supported by substantial evidence because the

ALJ failed to properly consider the medical opinions of the agency's own experts. The ALJ found that Roquemore had the RFC to perform "at least a wide range of sedentary work that would not involve more than occasional exertional postural activities such as stooping, crouching, and climbing." (Tr. 24). Roquemore argues that this RFC is erroneous because it does not account for Dr. Gibbons's findings in September 2007 or Dr. Mines's RFC questionnaire from July 2008. Dr. Gibbs found that Roquemore is "unable to perform any activities which would require him to do any bending, lifting, or twisting, or any standing and remain in a seated position for any extended periods of time." (Tr. 186). Dr. Gibbons further noted that Roquemore would have difficulty with climbing stairs or significant ambulation. (Id.).

Dr. Mines also addressed Roquemore's limitations in a RFC questionnaire. He completed the questionnaire after Roquemore's hearing before the ALJ, but before issuance of her written decision. (Tr. 237-38). It appears that the report was not submitted to the ALJ by Roquemore at that time. In his RFC questionnaire, Dr. Mines found that Roquemore could only sit for 15 minutes and stand/walk for 10 minutes at a time, and that he could sit for two hours and stand/walk for one hour out of an eight-hour workday. (Tr. 237). Dr. Mines further stated that Roquemore would need unscheduled breaks every 40 to 50 minutes and that he would be absent from work more than four times per month due to his impairments. (Tr. 237-38). The ALJ cited Dr. Gibbons's findings, but stated that Dr. Gibbons "apparently deferr[ed] to the reported subjective complaints, considering the minor objective findings." (Tr. 23).

-12-

Case 2:09-cv-00358-JPS   Filed 03/10/10   Page 12 of 15   Document 18

The ALJ did not reference Dr. Mines's findings because Dr. Mines's report apparently was never submitted to the ALJ.

The ALJ's assessment of Roquemore's RFC is not supported by substantial evidence because the ALJ dismissed Dr. Gibbons's findings based on his "deference" to Roquemore's subjective complaints, not because of failure to cite to Dr. Mines's report. As noted above, the ALJ did not conduct a proper credibility determination to arrive at her conclusion regarding Roquemore's asserted limitations. The ALJ dismissed many of Roquemore's claims as incredible in determining what he was still capable of doing; thus, her credibility determination also impacted the RFC finding. Further, reliance on the RFC evaluation done by state agency doctors rather than Dr. Gibbons's assessment is misplaced. Unlike the state agency physicians, Dr. Gibbons personally examined Roquemore and his evaluation merits considerable weight. Further, the RFC evaluation completed for the agency was done without the benefit of an examining source statement. (Tr. 194). Consequently, the court will direct the ALJ to conduct a new RFC determination. This new RFC determination should consider all relevant evidence of limitations now in the file, including the later-submitted report from Dr. Mines.

Additionally, Roquemore makes a related argument regarding the ALJ's determination that he is not disabled at step five of the agency's evaluation. The Social Security regulations create a five-step, sequential test for determining whether a claimant is disabled and thereby entitled to disability benefits. *Briscoe v. Barnhart*,

-13-

Case 2:09-cv-00358-JPS   Filed 03/10/10   Page 13 of 15   Document 18

425 F.3d 345, 351 (7th Cir. 2005). At step five of the test, the Commissioner must show that a significant number of jobs exist that the claimant can perform. *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004). If such jobs exist, then the claimant is not disabled. Here, the ALJ found that jobs exist in significant numbers that Roquemore could perform. In reaching her conclusion, the ALJ relied upon the testimony of the VE that a hypothetical person with Roquemore's limitations could perform a variety of unskilled sedentary jobs, such as general office worker, interviewer, order clerk, or receptionist. (Tr. 24). Roquemore argues that the ALJ did not present all of his relevant limitations to the VE to use in her hypothetical. Thus, the testimony regarding jobs a person with the presented limitations could perform does not support a finding that there are a significant number of jobs that Roquemore can perform.

The court previously found that the current credibility determination and RFC assessment are not supported by substantial evidence. Consequently, the step five analysis is also unsupported by substantial evidence. This is because the hypotheticals presented to the VE included limitations determined after an inadequate credibility and RFC assessment. New findings by the ALJ on remand may include additional limitations. For instance, if the ALJ credits Dr. Mines's finding that Roquemore will miss four days of work per month because of his impairments, the jobs previously identified by the VE do not apply. This is because the VE testified that an employer will only tolerate two employee absences per month in

unskilled work. (Tr. 52-53). Because the court is remanding to allow for a new credibility determination and RFC assessment, a new step five analysis is also appropriate.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for leave to file excess pages (Docket #17) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the decision of the Commissioner denying the plaintiff's application for disability insurance benefits and supplemental security income benefits be and the same is hereby **VACATED** and the plaintiff's application for benefits is **REMANDED** for further proceedings consistent with this opinion.

The clerk is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of March, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge